Matter of Lyons (2022 NY Slip Op 06130)

Matter of Lyons

2022 NY Slip Op 06130

Decided on November 2, 2022

Appellate Division, Second Department

Per Curiam.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on November 2, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

HECTOR D. LASALLE, P.J.
MARK C. DILLON
COLLEEN D. DUFFY
BETSY BARROS
SHERI S. ROMAN, JJ.

2021-01903

[*1]In the Matter of Lawrence Lyons, admitted as Lawrence Donald Lyons, an attorney and counselor-at-law. Grievance Committee for the Tenth Judicial District, petitioner; Lawrence Lyons, respondent. (Attorney Registration No. 2312940)

DISCIPLINARY PROCEEDING instituted by the Grievance Committee for the Tenth Judicial District. The Grievance Committee commenced this disciplinary proceeding pursuant to 22 NYCRR 1240.8 by the service and filing of a notice of petition and a verified petition, both dated March 12, 2021, and the respondent served and filed a verified answer dated April 23, 2021. Subsequently, the Grievance Committee served and filed a statement of disputed and undisputed facts dated May 12, 2021, and the respondent served and filed a response to the statement of disputed and undisputed facts dated May 24, 2021. By decision and order on application of this Court dated June 24, 2021, the matter was referred to John J. Halloran, Jr., as Special Referee, to hear and report. The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on March 28, 1990, under the name Lawrence Donald Lyons.

Catherine Sheridan, Hauppauge, NY (Ian P. Barry of counsel), for petitioner.
Foley Griffin, LLP, Garden City, NY (Thomas J. Foley of counsel), for respondent.

PER CURIAM.

OPINION & ORDER
The Grievance Committee for the Tenth Judicial District served the respondent with a verified petition dated March 12, 2021, containing 13 charges of professional misconduct, and the respondent served and filed a verified answer dated April 23, 2021. Subsequently, the Grievance Committee served and filed a statement of disputed and undisputed facts dated May 12, 2021, and the respondent served and filed a response to the statement of disputed and undisputed facts dated May 24, 2021. By decision and order on application of this Court dated June 24, 2021, the matter was referred to John J. Halloran, Jr., as Special Referee, to hear and report. A prehearing conference was held on July 27, 2021, and a hearing was conducted on August 20, 2021. The petition and the respondent's answer were amended by stipulation of the parties on August 20, 2021. The Special Referee filed a report dated October 28, 2021, in which he sustained all 13 charges. The Grievance Committee now moves to confirm the Special Referee's report and to impose such discipline upon the respondent as the Court deems just and proper. In an affirmation in response, the respondent's counsel states, inter alia, that the appropriate sanction is a public censure.
The Amended Petition
Charge one alleges that the respondent engaged in a conflict of interest by entering into a business transaction with a client where they had differing interests therein, in violation of rule 1.8(a) of the Rules of Professional Conduct (22 NYCRR 1200.0), as follows: At all times relevant herein, the respondent maintained an IOLA account at Chase Bank, account number ending in 6265, entitled "Law Offices of Lawrence D. Lyon [sic] IOLA Account" (hereinafter the IOLA account). [*2]In or about November 2015, the respondent verbally presented the terms of an investment in oil companies (hereinafter the Diesel Companies), which were owned, at least in part, by John Diesel, to a client, Sara Aswegan, who was also the respondent's sister-in-law.
Pursuant to an agreement between the respondent and Diesel, the respondent would retain 4% of any principal amount invested by individuals that the respondent secured to invest in any of the Diesel Companies. Pursuant to the respondent's agreement with Diesel, a portion of this 4% principal that the respondent retained would also be shared with Diesel's business partner, Patrick Cahill.
The respondent did not inform Aswegan, in writing, that he would retain a portion of any investment that she made.
On November 12, 2015, Aswegan wired $500,000 into the IOLA account. On January 7, 2016, the respondent wired $480,000 to an account controlled by Diesel, to effectuate Aswegan's investment. The respondent retained $20,000 of Aswegan's funds in the IOLA account. Thereafter, from said $20,000, the respondent paid Cahill $5,000.
The respondent failed to disclose and transmit in writing the full terms of the transaction to Aswegan, including his financial stake therein. The respondent failed to advise Aswegan in writing of the desirability of seeking the advice of independent legal counsel. Aswegan did not give informed consent, in writing, to the essential terms of the transaction.
Charge two alleges that the respondent engaged in a conflict of interest by entering into a business transaction with a client where they had differing interests therein, in violation of rule 1.8(a) of the Rules of Professional Conduct, as follows: In or about January 2016, the respondent verbally presented the terms of an investment in the Diesel Companies to his client, Natalie Kaplan.
Pursuant to an agreement between the respondent and Diesel, the respondent would retain 4% of any principal amount invested by individuals that the respondent secured to invest in any of the Diesel Companies. Pursuant to this agreement, a portion of the 4% principal that the respondent retained would also be shared with Diesel's business owner, Cahill.
In or about January 2016, the respondent verbally proposed to Kaplan that she pool $255,000 of her funds together with $245,000 from the respondent to invest together in the Diesel Companies.
On February 11, 2016, the respondent represented Kaplan in the sale of real property. The respondent deposited a check for $255,716.65, made payable to him, as attorney, into the IOLA account, representing Kaplan's proceeds from the closing. Per the terms of the agreement between the respondent and Kaplan, for her investment in the Diesel Companies, she would receive a 12% monthly interest rate return, and the respondent would receive a 6% monthly interest rate return. The respondent verbally agreed to guarantee Kaplan's monthly interest payment. Kaplan verbally agreed to these terms.
The respondent had separately made an agreement with Diesel in which the respondent would receive a $10,000 bonus one year after the funding of this investment, as well as a 1% ownership interest in one of the Diesel Companies. The respondent did not inform Kaplan, in writing, of either his $10,000 bonus or 1% ownership interest, or that he planned to retain 4% of any principal invested.
In or about February 2016, the respondent had on deposit in the IOLA account at least $279,000 of his personal funds.
In connection with this investment, the respondent received a $500,000 promissory note dated February 5, 2016, from Cahill and Diesel, guaranteeing repayment of the principal with interest at the rate of 18% to the respondent.
On February 12, 2016, the respondent wired $480,000 to an account controlled by Diesel to effectuate this investment. The respondent retained $20,000 in the IOLA account.
The respondent failed to disclose and transmit in writing the full terms of the transaction to Kaplan, including the respondent's financial interest therein. The respondent failed to advise Kaplan in writing of the desirability of seeking the advice of independent legal counsel. Kaplan did not give informed consent, in writing, to the essential terms of the transaction.
Charge three alleges that the respondent engaged in a conflict of interest by entering into a business transaction with a client where they had differing interests therein, in violation of rule 1.8(a) of the Rules of Professional Conduct, as follows: On December 11, 2015, the respondent represented Aswegan at a real estate closing where Aswegan received funds representing the payoff of a private loan. The respondent received $100,366.63, as Aswegan's attorney, which he deposited [*3]into the IOLA account on behalf of Aswegan.
On February 23, 2016, the respondent deposited $115,113.61 of his personal funds into the IOLA account.
The respondent facilitated a second investment in the Diesel Companies by Aswegan. Pursuant to an agreement between the respondent and Diesel, the respondent would retain 4% of any principal amount invested by individuals that the respondent secured to invest in any of the Diesel Companies. Pursuant to this agreement, a portion of this 4% principal that the respondent retained would also be shared with Diesel's business partner, Cahill.
In connection with this investment, the respondent received a $200,000 promissory note dated February 24, 2016, from Cahill and Diesel, guaranteeing repayment to the respondent.
On February 26, 2016, the respondent wired $190,000 to an account controlled by Diesel to effectuate this investment. This $190,000 wire was funded, in part, by the $215,480.24 that the respondent had on deposit in the IOLA account comprised of funds held on behalf of Aswegan as well as his personal funds. The respondent retained the remaining $25,480.24 of these funds in the IOLA account.
The respondent failed to disclose and transmit in writing the full terms of the transaction to Aswegan, including the respondent's financial interest therein. The respondent failed to advise Aswegan in writing of the desirability of seeking the advice of independent legal counsel. Aswegan did not give informed consent, in writing, to the essential terms of the transaction.
Charge four alleges that the respondent engaged in a conflict of interest by entering into a business transaction with a client where they had differing interests therein, in violation of rule 1.8(a) of the Rules of Professional Conduct, as follows: In or about March 2016, the respondent represented Aswegan as her attorney at the closing of a real estate sale in which she received a payoff of $201,199.88 from a private investment. On March 31, 2016, the respondent deposited a check for $201,199.88, payable to him as attorney, into the IOLA account, representing Aswegan's funds.
On April 7, 2016, the respondent received a wire into the IOLA account for $150,350, representing funds payable to the respondent as a loan payoff on property in which he had personally invested.
In or about April 2016, the respondent represented a client, H & C Exploration, at the closing of a real estate sale in which H & C Exploration received a payoff of $192,089.99 from a private investment. On April 29, 2016, the respondent deposited a check for $192,089.99, payable to him as attorney, into the IOLA account.
Prior to the respective closings, the respondent verbally presented investment terms to H & C Exploration and Aswegan for an investment in the Diesel Companies, which was a 12% monthly interest rate on their respective investments, and the respondent would earn a 6% monthly interest rate.
Pursuant to an agreement between the respondent and Diesel, the respondent would retain 4% of any principal amount invested by individuals that the respondent secured to invest in any of the Diesel Companies. Pursuant to this agreement, a portion of the 4% principal that the respondent retained would also be shared with Diesel's business partner, Cahill.
The respondent did not inform H & C Exploration or Aswegan, in writing, that he would retain 4% of any principal they invested as his commission.
The respondent received a $500,000 promissory note dated April 14, 2016, from Cahill and Diesel, guaranteeing repayment of the principal with interest at the rate of 18% to the respondent.
The combined funds for Aswegan, H & C Exploration, and the respondent totaled $543,639.87. On May 2, 2016, the respondent wired $480,000 to an account controlled by Diesel, to effectuate this investment. The respondent retained $63,639.87.
The respondent failed to disclose and transmit in writing the full terms of the transaction to Aswegan or the principals of H & C Exploration, including the respondent's financial interest therein. The respondent failed to advise Aswegan or the principals of H & C Exploration in writing of the desirability of seeking the advice of independent legal counsel. Neither Aswegan nor the principals of H & C Exploration gave informed consent, in writing, to the essential terms of the transaction.
Charge five alleges that the respondent engaged in a conflict of interest by entering into a business transaction with a client where they had differing interests therein, in violation of rule 1.8(a) of the Rules of Professional Conduct, as follows: In or about February 2016, the respondent [*4]represented a client, Nunzio Marmo, at the closing of a real estate sale in which Marmo received a payoff of $210,066.56 from a private loan. Prior to closing, the respondent verbally presented an investment opportunity in the Diesel Companies to Marmo.
Pursuant to an agreement between the respondent and Diesel, the respondent would retain 4% of any principal amount invested by individuals that the respondent secured to invest in any of the Diesel Companies. Pursuant to this agreement, a portion of the 4% principal that the respondent retained would also be shared with Diesel's business partner, Cahill. The respondent did not inform Marmo, in writing, that the respondent would retain 4% of the principal invested by Marmo.
On February 16, 2016, the respondent deposited a check for $210,066.56, payable to him as attorney, into the IOLA account, representing Marmo's funds. On May 10, 2016, the respondent deposited a check from Marmo in the amount of $150,000 into the IOLA account, which was made payable to the respondent as attorney.
On May 27, 2016, the respondent received a $200,000 wire deposit into the IOLA account from Aswegan for her further investment in the Diesel Companies.
In or about May 2016, the respondent approached Kaplan about investing again in the Diesel Companies. The respondent and Kaplan verbally agreed that she would invest $250,000 in the Diesel Companies, at a return of 12% monthly interest. The respondent and Kaplan further verbally agreed that the respondent would hold a $250,000 promissory note in his name, guaranteeing repayment of Kaplan's loan in the Diesel Companies to him. The respondent and Kaplan further agreed that the respondent would personally guarantee repayment of Kaplan's $250,000 loan in the Diesel Companies.
In connection with this investment, the respondent received a $250,000 promissory note dated May 24, 2016, from Cahill and Diesel, guaranteeing repayment of the principal with interest at the rate of 18% to the respondent.
On or about May 27, 2016, the respondent represented Kaplan at the closing of a real estate matter where Kaplan received the payoff from a private loan. At the closing, the respondent received a check for $415,876.81, payable to the respondent, as attorney, which he deposited into the IOLA account on Kaplan's behalf. As Kaplan was only investing $250,000 in the Diesel Companies in this second investment, the respondent agreed to maintain $165,876.81 of Kaplan's funds in the IOLA account, to be paid out to Kaplan at a rate of $1,600 per month.
The combined funds from Marmo, Aswegan, and Kaplan totaled $800,000. On June 6, 2016, from this pool of funds, the respondent wired $768,000 to Diesel to effectuate these investments. The respondent retained $32,000 in the IOLA account.
The respondent failed to disclose and transmit in writing the full terms of the transaction to Marmo, Aswegan, or Kaplan, including the respondent's financial interest therein. The respondent failed to advise Marmo, Aswegan, or Kaplan in writing of the desirability of seeking the advice of independent legal counsel. Neither Marmo, Aswegan, nor Kaplan gave informed consent, in writing, to the essential terms of the transaction.
Charge six alleges that the respondent utilized his attorney trust account to engage in business transactions which were not incident to his practice of law, in violation of rule 1.15(b) of the Rules of Professional Conduct, as follows: Commencing in February 2016 and continuing through February 2017, funds were wired into the IOLA account from an account controlled by Diesel, representing monthly interest payable to the investors. By June 2016, the monthly wire into the IOLA account from Diesel totaled $37,500. Commencing in February 2016 and continuing through May 2017, the respondent disbursed monthly interest payments to the investors from the IOLA account. The monthly payments that the respondent made to the investors were a result of their investments in the Diesel Companies and were unrelated to any legal work performed by the respondent for the investors.
Charge seven alleges that the respondent commingled his own funds with funds entrusted to him as a fiduciary, in violation of rule 1.15(a) of the Rules of Professional Conduct, as follows: On December 11, 2015, the respondent represented Aswegan at a real estate closing in which Aswegan received funds representing the payoff of a private loan. The respondent received $100,366.63, as Aswegan's attorney, which he deposited into the IOLA account on Aswegan's behalf.
On February 23, 2016, the respondent deposited $115,113.61 of his personal funds into the IOLA account. These personal funds remained on deposit in the IOLA account until [*5]February 26, 2016, when the respondent wired $190,000 to an account controlled by Diesel to effectuate a joint investment in the Diesel Companies.
On or about May 27, 2016, the respondent agreed with Kaplan that he would maintain $165,876.81 in a fiduciary capacity in the IOLA account, to be paid out to Kaplan at a rate of $1,600 per month.
Between in or about July 2016 and in or about April 2017, Diesel remitted $37,500 monthly to the respondent by wire deposit into the IOLA account. A portion of this $37,500 wire deposit was funds payable to the respondent as his pro rata share of investments in the Diesel Companies, which were derived from his own personal investments and not from any legal work performed by him.
Between in or about July 2016 and at least in or about July 2017, the respondent maintained funds in the IOLA account in a fiduciary capacity for Kaplan.
Charge eight alleges that the respondent misappropriated funds entrusted to him as a fiduciary, in violation of rule 1.15(a) of the Rules of Professional Conduct, as follows: On December 11, 2015, the respondent deposited a check for $100,366.63, made payable to him as attorney, into the IOLA account, which represented funds held for the benefit of Aswegan. Between December 11, 2015, and February 26, 2016, the respondent was required to maintain at least $100,366.63 on Aswegan's behalf. On February 12, 2016, the balance in the IOLA account was only $86,418.34.
Charge nine alleges that the respondent misappropriated funds entrusted to him as a fiduciary, in violation of rule 1.15(a) of the Rules of Professional Conduct, as follows: On February 16, 2016, the respondent deposited a check for $201,066.56, made payable to him as attorney, into the IOLA account, which represented funds held for the benefit of his client Marmo. Between February 16, 2016, and June 6, 2016, the respondent was required to maintain at least $201,066.56 in the IOLA account on Marmo's behalf. Between February 16, 2016, and June 6, 2016, the balance in the IOLA account fell below the amount that the respondent was required to maintain on deposit for Marmo's benefit, as follows: on February 26, 2016, the balance was $157,779.87, and on March 10, 2016, the balance was $130,625.24.
Charge ten alleges that the respondent misappropriated funds entrusted to him as a fiduciary, in violation of rule 1.15(a) of the Rules of Professional Conduct, as follows: On May 27, 2016, the respondent deposited a check for $415,876.81, made payable to him as attorney, into the IOLA account, which represented funds held for the benefit of his client Kaplan.
On June 6, 2016, the respondent wired funds to an account controlled by Diesel, including $250,000 of Kaplan's funds. Thereafter, the respondent was required to maintain $165,876.81 in the IOLA account on Kaplan's behalf, to be remitted to Kaplan at a rate of $1,600 per month.
On June 6, 2016, the balance in the IOLA account was only $161,007.64. On March 1, 2017, the respondent was required to have at least $149,876.81 on deposit in the IOLA account for Kaplan, but the balance was only $56,850.08.
On April 1, 2017, the respondent was required to have at least $148,276.81 on deposit in the IOLA account for Kaplan, but the balance was only $23,038.70.
On May 1, 2017, the respondent was required to have at least $146,676.81 on deposit in the IOLA account for Kaplan, but the balance was only $28,248.70.
Charge eleven alleges that the respondent failed to maintain contemporaneous records of all financial transactions in his IOLA account, in violation of rule 1.15(d)(2) of the Rules of Professional Conduct, as follows: Between December 2015 and May 2017, the respondent failed to make accurate entries of all financial transactions in his records of receipts and disbursements for the IOLA account in a ledger book or similar record at or near the time of the event recorded.
Charge twelve alleges that the respondent failed to properly identify his attorney special account, in violation of rule 1.15(b)(2) of the Rules of Professional Conduct, as follows: On July 7, 2000, the respondent opened the IOLA account with the title "IOLA-Law Office of Lawrence D. Lyon IOLA Account." Checks drawn on the IOLA account contain the title "Law Office of Lawrence D. Lyons."
Charge thirteen alleges that the respondent engaged in conduct that adversely reflects on his fitness as a lawyer, in violation of rule 8.4(h) of the Rules of Professional Conduct, by engaging in any or all of the above-mentioned conduct.
Findings and Conclusion
In view of the respondent's admissions to all the charges and the evidence adduced, we find that the Special Referee properly sustained all the charges. The Grievance Committee's motion to confirm the Special Referee's report is therefore granted.
In determining an appropriate measure of discipline to impose, the record confirms that the respondent engaged in a conflict of interest by entering into several business transactions with his clients where the respondent and his clients had differing interests without, inter alia, disclosing and transmitting, in writing, the full terms of the transactions, and failing to advise his clients, in writing, of seeking the advice of independent legal counsel; used his attorney special account to engage in business transactions which were not incident to his practice of law; misappropriated funds entrusted to him as a fiduciary; commingled his own funds with funds entrusted to him as a fiduciary; failed to maintain contemporaneous records of all financial transactions in his attorney special account; failed to properly identify his attorney special account; and as a consequence, engaged in conduct that adversely reflects on his fitness as a lawyer.
In aggravation, we note that the respondent has substantial experience in the practice of law, his conduct occurred over the course of approximately two years, and his clients have not entirely been made whole—as of the date of the hearing, at least two of his clients were owed substantial sums of money from their investments with the Diesel Companies.
We have also considered, in mitigation, evidence that the respondent's conduct occurred during a period when he experienced personal and family-related issues, his admission of wrongdoing, his expressed remorse, the remedial measures he has implemented, his cooperation with the Grievance Committee, his good character and community involvement, the absence of a disciplinary history, that he personally suffered significant financial loss from the same investments, that no client/investor filed complaints against him, and that he continues to have business relationships with these client/investors.
Under the totality of the circumstances, we conclude that the respondent's conduct warrants his suspension from the practice of law for a period of two years (see Matter of Jones, 118 AD3d 41).
LASALLE, P.J., DILLON, DUFFY, BARROS and ROMAN, JJ., concur.
ORDERED that the Grievance Committee's motion to confirm the Special Referee's report is granted; and it is further,
ORDERED that the respondent, Lawrence Lyons, admitted as Lawrence Donald Lyons, is suspended from the practice of law for a period of two years, commencing December 2, 2022, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than June 2, 2024. In such application (see 22 NYCRR 1240.16), the respondent shall furnish satisfactory proof that during the period of suspension he (1) refrained from practicing or attempting to practice law, (2) fully complied with this opinion and order and with the terms and provisions of the rules governing the conduct of disbarred or suspended attorneys (see id. § 1240.15), (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11(a), and (4) otherwise properly conducted himself; and it is further,
ORDERED that the respondent, Lawrence Lyons, admitted as Lawrence Donald Lyons, shall comply with the rules governing the conduct of disbarred or suspended attorneys (see id. § 1240.15); and it is further,
ORDERED that pursuant to Judiciary Law § 90, during the period of suspension and until further order of this Court, the respondent, Lawrence Lyons, admitted as Lawrence Donald Lyons, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,
ORDERED that if the respondent, Lawrence Lyons, admitted as Lawrence Donald Lyons, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in his affidavit of [*6]compliance pursuant to 22 NYCRR 1240.15(f).
ENTER:
Maria T. Fasulo
Clerk of the Court